UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUNICE OSBORNE,

              Plaintiff,

vs.                                             CIVIL NO.:  05-CV-74357-DT

COMMISSIONER OF                    HON. MARIANNE O. BATTANI
SOCIAL SECURITY,                       MAG. JUDGE WALLACE CAPEL, JR.

              Defendant.
_____/

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for further fact finding consistent with this Report.

## II.    REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits in November 2002, alleging that she had been disabled and unable to work since November 17, 2001, due to problems with her neck, the upper right side of her body, her right hand, her upper arm, and a pinched nerve. (TR 43-45, 57). The Social Security Administration [SSA] denied benefits initially on April 7, 2003. (TR 31-35). A de novo hearing was held on June 29, 2004, before Administrative Law Judge [ALJ] Wilenkin. (TR 207-33). In a decision dated July 26, 2004, the ALJ found that Plaintiff could perform a range of light work. (TR 19-24). Accordingly, Plaintiff was found not disabled. (TR 24). On

1

December 23, 2004, the Appeals Council denied review, making the ALJ's decision the final decision

of the Commissioner.  (TR 7-9).  Plaintiff then appealed to federal district court.[1]

### A.      PLAINTIFF'S TESTIMONY

At the hearing on June 29, 2004, The ALJ stated to Plaintiff:

> You, on any number of occasions, have been advised of your right to be represented
> by an attorney or anybody else of your choosing.  You may waive that right, if you
> wish.  I suppose, since you're here today, alone, you wish to proceed without benefit
> of counsel.  Am I correct in that assumption, or am I incorrect.

(TR 209).  Plaintiff stated that the ALJ was correct.  Id.

Plaintiff testified that she was born on December 13, 1964.  (TR 210).  She reported that she

lives in a two-story home with a basement.  Id.  She sleeps on the first floor.  Id.  Her three children,

ages eleven, fifteen, and twenty, reside with her.  (TR 211).  She was driven to the hearing and does

not drive, although she has a license.  Id.  She stated that she "like[s] to try to drive."  Id.  She stated

that  her doctor does not want her driving due to drowsiness caused by her medication.  Id.  She stated

that she has been on medication since her car accident on November 11, 2001.  (TR 212).  She stated

that her doctor keeps changing her medication.  (TR 211).

Plaintiff is a high school graduate and has an associates degree.  (TR 212).  She stated that she

is currently attending college in pursuit of her bachelor's degree in Special Education.  She stated that

she attended school full-time the previous semester, and does not currently work.  Id.

Previously, Plaintiff was employed with Detroit Public Schools at Weber Middle School in the

Special Education department.  (TR 213).  She worked there beginning in September 1990 and stopped

working in November 2001 after a car accident.  Id.  She stated that a car "came at [her] and [her]

vehicle hit something," then she woke up in Sinai Hospital.  Id.  She reported that she had car

---

[1]Upon her request, Plaintiff was granted extra time in which to file her appeal.  (TR 5).

insurance that paid lost wages, but the payments stopped the year prior to the hearing.  (TR 213-14). She stated that an insurance agent called her and said that the best thing to do was to take a certain amount of money as a final payment and then file for disability.  (TR 214).

She stated that she sustained neck injuries affecting the right side of her body.  Id.  She reported that she could not move her right arm (which is dominant), and she had to attend physical therapy.  Id. She stated that she continues to have problems relating to same and this keeps her from working.  (TR 214-15).  She stated that someone[2] told her that she would not be able to work.  (TR 215).  She stated that her right arm continues to be immobile and burns with pain "[a]ll over."  (TR 215-16).  Her fingers tingle and pain shoots from her neck down her arm and radiates.  (TR 216).  She stated that "sometimes, it feels like pins and needles are sticking in it."  Id.  She stated her ring finger and index finger are the primary fingers involved in the pain in her right hand.  (TR 216-17).   She has pain in her wrist shooting up and down and "[i]t feel[s] like burning, fire, burning pain."  (TR 217).

Plaintiff stated that she learned to move her right arm, using her left arm at therapy and that her right arm has "[v]ery limited" movement on its own.  Id.  She stated that she cannot extend her right arm out to the side or reach it above her head, but she can reach above her head with her left arm. Id.  She stated that there is little active movement with her right shoulder and she cannot extend and bend her right arm at the elbow, either.  (TR 218).  She stated that she saw an occupational therapist as well as a physical therapist for a period from November 2001 until she stopped physical therapy in July 2003.  (TR 218-220).  In therapy, they used ice and heat as well as "electronoles" as part of her treatment.  (TR 222).

---

[2]It is not clear from the transcript whether she is referring to a doctor or someone from the insurance company.  (TR 214-15).

3

Plaintiff treats with a neurologist and started treating with an orthopedic physician. (TR 221). She stated that she was supposed to have some surgery, but has not been able to do to problems using an IV in her right arm. Id. She stated that her doctors may give her "shots," but have not begun treatment with injections at this time. Id. She reported that she was given exercises to do at home and a machine to hook up at home as well. Id.

Plaintiff reported that she was prescribed medication, but that it does not do anything for her, other than make her sleepy and groggy. (TR 222). She has burning pain most of the time, but she tries to deal with it or ignore it. Id. In addition to her problems with her right upper extremity, Plaintiff's feet swell, and she is generally very tired. Id. Plaintiff reported that she has gained a lot of weight, partly due to steroids that she was prescribed at one time in doses taken four times a day. (TR 223). Generally, she wakes up early around three or four in the morning and does not sleep well. Id. When she wakes up she is sleepy, groggy, and dizzy. Id.

Plaintiff stated that she can feed herself, but her children help with her personal needs such as bathing and dressing. (TR 223-24). She is not able to dress herself because she needs someone to fasten buttons and zippers for her. (TR 224). She stated that she tries to dust lightly with her left hand to help with housework, but she cannot cook and her father does most of the cooking as well as the laundry. Id. She reported that her "dad do[es] everything." Id. She stated that her three daughters are busy with educational programs. Id.

Plaintiff reported that she is involved with the church choir. Id. However, she no longer goes out to the movies, because she is too sleepy. (TR 224-25). She stated that she is sleeps often and goes to her family room to sit when her medicine makes her dizzy. (TR 225). She stated that she tries to do her best and "believe[s] [she is] going to overcome this." Id.

She reported that she does "fine" in school.  (TR 226).  She stated that sometimes people help her and type papers.  Id.  She stated that she tries to type left-handed, but still needs help if she cannot reach keys with her left hand or cannot press all the keys necessary with her left hand.  (TR 226-27).  She stated that she reads the material or has someone translate it.  (TR 227).  She stated that it is difficult for others to read her left-handed writing.  Id.  She plans on staying successful in school.  Id.  However, she reported that she sleeps a lot in class sometimes and has a seat up against the wall, but school understands.    Id.

Plaintiff offered the following in closing:

> It's like my whole life flashed before me.  Something that I know I'm good at, and I'm going to continue, because I'm going to fight.  And I've seen both sides, now, how to work with people with disability, and I'm learning how to deal with mine, and I like to help people, and I like to work in the community.  I even try to teach all my children to do that.  To get involved and always give something back.  And I'm going to continue to instill that in them. . . . and I don't want them to feel like they have to hold on, and be an invalid so much to me, their mom, because a fighter wins and a quitter never wins.  And I'm not going to quit.

(TR 225-26).

### B.    MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment and the ALJ's decision reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive.  The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[3]

### C.    VOCATIONAL EXPERT'S TESTIMONY

Dr. Edward Brown, a vocational expert [VE], testified at the hearing.  (TR 226, 227-31).  He stated that Plaintiff had transferrable clerical skills at the semi-skilled level.  (TR 226).  The ALJ presented a hypothetical question to the VE regarding whether a claimant with Plaintiff's age,

---

[3]Subpart E, infra, at 7.

5

education, and work experience, whose testimony was an accurate description of her abilities, was

capable of Plaintiff's past relevant work.  (TR 227).  The VE testified that Plaintiff would not be

capable of doing her past work.  (TR 228)  However, he also stated that

> [t]he work that she's doing in the University is the equivalent of light work, and the
> matter would swing from a vocational standpoint, although it's probably much more
> thorny [phonetic] in other ways, about how much accommodation they're really
> making for her.  If they are, indeed, making serious accommodations in terms of
> having her keyboarding done for her, having her materials translated, whatever that
> means, for her in making these kinds of accommodations, then one can assume that this
> would be transferable to the world of work.

Id.  When asked what positions would be available for such an individual, the VE testified

> [u]nfortunately, it would be well below the physical demands of the work that she
> wants to do, and it would have to be unskilled where she couldn't use her interests in
> helping other people.  The only kind of point of entry, if her upper dominant extremity
> is in -- affected to the degree that she describes, is some kind of custodial work,
> janitorial work, housekeeping work.  All I -- all those jobs capitalize on your ability
> to get around and have one useful extremity.  She is certainly going the extra mile to
> stay in school and stay working, but those accommodations, unfortunately aren't
> usually something that's done in a workforce, so we'll have to look at unskilled work.

(TR 228-29).  The VE testified that about 3,200 such positions exists in the counties surrounding the

hearing site and double that number exist for the whole state.  (TR 229).  The VE testified that his

testimony was consistent with the Dictionary of Occupational Titles [DOT].  Id.

Plaintiff was confused by the VE's testimony.  Id.  The VE reiterated his testimony in more

simple terms and stated that there were jobs that Plaintiff could definitely do with the use of only one

arm.  (TR 229-30).  Plaintiff went on to talk with the VE, but the ALJ interrupted and stated that

Plaintiff could not "say something," and reminded Plaintiff only to ask questions of Dr. Brown about

his vocational testimony.  (TR 230).  Plaintiff then asked the VE about the medication Neurontin, but

the VE testified that he "do[esn't] deal with that."  (TR 230-31).  Plaintiff stated that her medication

makes her sleepy and her doctor has advised her that she cannot operate certain machinery when she

takes it. (TR 231). The ALJ responded that the VE has testified that under the restrictions from her physician and therapist, she would not be able to do any work. (TR 231-32).

### D.    ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that the medical evidence establishes that the "claimant has some loss of mobility of the right upper extremity that is a 'severe' impairment," (TR 23), but that she does not have an impairment as set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 20). The ALJ found Plaintiff's testimony not fully credible. (TR 20-22, 23). He determined that Plaintiff had the RFC to perform "a significant range of light work." (TR 24). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 19, 24).

### E.    ANALYSIS

Plaintiff advances several claims in her Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because (1) the ALJ did not adequately advise Plaintiff of her right to counsel at the administrative level; (2) the ALJ did not adequately develop the record; (3) Plaintiff's limitations are not consistent with the Dictionary of Occupational Titles in terms of the VE's reliance on same; and 4) the ALJ did not adequately address Plaintiff's side effects from medications.[4] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[5] The matter is now ready for decision.

----

[4]Plaintiff's Motion for Summary Judgment and Brief filed February 10, 2006, (hereinafter "Plaintiff's Brief") at pages 5-16.

[5]Defendant's Motion for Summary Judgment and Brief filed March 30, 2006, (hereinafter "Defendant's Brief") at pages 7-13.

### 1.        Standard of Review

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g) (2006).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  Applying these standards, I will analyze each of Plaintiff's claim.

### a.        Right to Counsel and Development of the Record

Plaintiff argues that the ALJ did not adequately advise Plaintiff of her right to counsel.[6] Specifically, Plaintiff alleges that the ALJ should have explained the concept of the contingency fee and also explained that "representation might be helpful in the development of the medical evidence, testimony about limitations and abilities and with cross examination of the vocational expert."[7] She relies on a District Court case from the Eastern District of Wisconsin, arguing that waiver of counsel

---

[6]Plaintiff's Brief at pages 5-6.

[7]Plaintiff's Brief at page 6.

is invalid where the ALJ does not fully developed and the form waiving counsel did not explain the

contingency fee.[8]

It bears repeating that the ALJ stated to Plaintiff,

You, on any number of occasions, have been advised of your right to be represented
by an attorney or anybody else of your choosing.  You may waive that right, if you
wish.  I suppose, since you're here today, alone, you wish to proceed without benefit
of counsel.  Am I correct in that assumption, or am I incorrect.

(TR 209).  Plaintiff replied that the ALJ was correct.  Id.  Defendant argues that

[t]he notice also explained that the local Social Security office had a list of those legal
assistance groups (Tr. 35). Still further, the notice explained that attorneys would be
hired on a contingency fee arrangement and that there was a limitation on attorney fees
to 25% of past due benefits (Tr. 35). Plaintiff later filed a request for hearing and
signed with an "x" to acknowledge the understanding that she had a right to be
represented at the hearing (Tr. 36). She received a July 2003 pre-hearing order for
unrepresented claimants, which provided more explanation about the hearing process
(Tr. 38).[9]

Plaintiff did sign some of her documents with an "x." (TR 72).  She explained on December 31, 2002,

that "Someone did my writing for me, b/c I unable [sic] to write." (TR 68).

The Sixth Circuit has held that Plaintiff may properly waive representation of counsel.  Duncan

v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986).  In Duncan,

the ALJ specifically asked Duncan if he had received the notice sent by the Secretary
which informed him of his right to be represented by an attorney at the hearing.
Duncan acknowledged that he had indeed received such a notice. Duncan also stated
that he wanted to proceed with the hearing, even though he was not represented by
counsel. From this it is clear that Duncan was aware of his right to counsel and that
he voluntarily waived that right. Under these circumstances, the ALJ had no further
duty to discuss Duncan's right to representation. The ALJ acted properly in being
satisfied that Duncan was informed of his right.

_____

[8]Plaintiff's Brief at pages 6-7 (citing Henderson v. Barnhart, 205 F. Supp. 2d 999 (E.D. Wisc.
2002)).

[9]Defendant's Brief at pages 9-10.

Id.  Further, in <u>Duncan</u>, the Sixth Circuit held that the ALJ has a "special duty" to develop the record

and to ensure a fair hearing when the claimant is without counsel.  <u>Id.</u> at 856 (citing <u>Lashley</u> v. Sec'y

of Health and Human Servs., 708 F.2d 1048, 1051 (6th Cir. 1983)).  Plaintiff also argues that the

ALJ failed to adequately develop the record in this case.

> There is no bright line test for determining when the administrative law judge has
> assumed the role of counsel or failed to fully develop the record. The determination
> in each case must be made on a case by case basis. On appeal this Court has
> indicated that it will "scrutinize the record with care" where the claimant appeared
> before the administrative law judge without counsel. <u>See</u> <u>Holden v. Califano</u>, 641
> F.2d 405, 408 (6th Cir.1981). This special scrutiny, however, does not always result
> in reversal. Id. It is clear that a claimant may waive his statutory right to counsel. 20
> C.F.R. § 404.971. <u>See</u> <u>McConnell</u>, 655 F.2d at 606.

<u>Lashley</u>, 708 F.2d at 1052.  Further, unlike the present Plaintiff, "Lashley possessed limited

intelligence, was inarticulate, and appeared to be easily confused."  <u>Id.</u>  Although Plaintiff, in the case

at bar, did get confused by the VE's testimony, she was able to articulate the misunderstanding, and

the VE was able to clarify.  (TR 229-30).  Further, she was able to ask the VE whether he was

testifying that jobs existed for her with only the use of one arm.  (TR 230).  The VE answered in the

affirmative.  <u>Id.</u>

Plaintiff argues in part that the ALJ should have developed the record by obtaining further

information from her treating source.[10] Plaintiff supports this argument with citations to the record

regarding significant problems with her right arm and shoulder.[11]  However, the ALJ found same to

be a significant impairment and included same in his hypothetical to the VE.  (TR 23-24, 227-29).

Further, as in <u>Duncan</u>, the Plaintiff here has not presented evidence of what should have been

further developed.  The Sixth Circuit explained,

_____

[10]Plaintiff's Brief at page 9.

[11]Plaintiff's Brief at pages 10-11.

> Duncan has not suggested, and we are unable to determine, what possible further information could have been brought forth at the hearing which would have enhanced a determination of disability. Cf. Lashley, 708 F.2d at 1053. The ALJ thoroughly reviewed the evidence presented in this case and adequately discussed in his decision his analysis of Duncan's claims, the medical exhibits and the testimony. We fail to see how, under these circumstances, Duncan has been denied a full and fair hearing.

Duncan, 801 F.2d at 856. Plaintiff does point to other evidence that was submitted after the ALJ's decision, but that evidence does not warrant reversal as discussed below.[12]

### b.     DOT

In addition, Plaintiff argues that the VE did not provide the DOT numbers of custodial, janitorial, and housekeeping positions.[13] Further, Plaintiff argues that if Plaintiff cannot "grasp, hold or perform any duties requiring significant manual dexterity of the right hand, she cannot do any work."[14] As to the first concern, the VE did in fact testify that about 3,200 positions "of the sort [he] described" existed in the surrounding counties and double that number exists for the entire state of Michigan. (TR 229). This is sufficient.

As Defendant argues, the number of positions is significant. Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (finding that between 1,350 and 1,800 jobs in the region constitute "work in significant numbers," although there is no "special number").[15] Furthermore, as Defendant adds, an ALJ is not required to rely on the DOT, but can rely on the VE's testimony, even when it is

---

[12]See discussion infra page 13.

[13]Plaintiff's Brief at page 13.

[14]Plaintiff's Brief at page 13 (citing Lockard v. Apfel, 17 F. Supp. 2d 28 (D.C. Cir. 2001).

[15]Defendant's Brief at page 13.

11

inconsistent with the DOT.  Conn v. Sec'y of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995).[16]

In terms of the inability to do any work due to her right hand problems, Plaintiff relies on  a district court outside of the Sixth Circuit.  In any event, such a case has no precedential value here and can be distinguished in light of the VE's testimony that there are jobs Plaintiff could do with her upper right extremity limitations as she herself described them.  (TR 227-28).

In addition, Plaintiff argues that "[i]t is difficult to imagine a janitorial, custodian, or housekeeping occupation that could be performed with one upper extremity."[17]  However, Plaintiff provides no actual evidence to contradict the VE's testimony that those positions can in fact be performed with one upper extremity.  The Sixth Circuit has that, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . . . put flesh on its bones."  McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

### c.    Side Effects from Medication

Plaintiff argues that the ALJ neither acknowledge side effects from her medications nor included same in the hypothetical to the VE.[18]  Further, Plaintiff argues that notations from sources such as the Physicians Desk Reference [PDR] are considered corroboration of adverse side effects from medication.[19]  Although the ALJ stated that the VE had considered her medications' side effects

---

[16]Defendant's Brief at pages 12-13.

[17]Plaintiff's Brief at page 12.

[18]Plaintiff's Brief at page 14.

[19]Plaintiff's brief at pages 14-15 (citing Narrol v. Heckler, 727 F.2d 1303 (D.C. Cir. 1984).

and that same would eliminate all work, but no such testimony exists.[20]  (TR 231).  Further, the ALJ

stated in his decision that "[t]he vocational expert was asked at the hearing whether the claimant could

perform her past relevant work or any other type of work, assuming her testimony as to her limitations

was accurate, except for her alleged need to lie down daily."  (TR 20).

      The transcript does not reflect testimony from the VE that he considered her medications' side

effects or her need to lay down daily.  The ALJ found that "[t]he records fail to document any

medication side effects."  (TR 21).  When a claimant complains of side effects from his medication

for the first time at the hearing, and none of the medical reports indicate that he complained to a doctor

about the side effects, such a complaint is not normally entitled to credibility.  E.g., Steiner v. Sec'y

of Health and Human Servs., 859 F.2d 1228, 1231 (6th Cir. 1987).

      However, the present record reveals that Plaintiff initially reported sleepiness as a side effect

on her "Disability Report" on November 19, 2002.  (TR 62).  She also noted in her "Pain

Questionnaire" on December 31, 2002, that her medication makes her drowsy.  (TR 67).  Further, on

June 14, 2004, she reported that she sometimes fall asleep while sitting.  (TR 78).

      Additionally, Plaintiff's physical therapy notes are inconsistent regarding "sleeping."  On

January 14, 2003, February 13, 2003, April 22, 2003, and June 26, 2003, her sleep was reported as

"severe difficulty/impairments."  (TR 158, 159, 164, 166).  On November 7, 2002, November 25,

2002, and December 11, 2002, Plaintiff was reported to have "no  difficulty/normal" sleep.  (TR 99,

104, 181-83).  On March 13, 2003, "sleeping" was reported to be "not applicable to patient."  (TR

152).  Further, on July 8, 2003, "sleeping" was reported to be "not applicable to patient," and was "not

a goal at this time." (TR 135).  Physical therapy notes on December 24, 2002, read, "Pt [sic] required

frequent rest breaks during and between activities. Pt [sic] stated that Dr. DeSilva prescribed new med,

[20]Plaintiff's Brief at page 14.

which she begins taking today." (TR 191). The Sixth Circuit has stated that it is not the responsibility of the Court "to resolve conflicting evidence in the record." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003).

Plaintiff did submit further information to the Appeals Council regarding her medications.[21] As Defendant points out,

> The fact that Plaintiff submitted to the Appeals Council two letters from Dr. Attansio, dated four months and nearly one year after the ALJ's decision was rendered (Tr. 201-02) is of no moment here. Such an opinions could not be considered for purposes of substantial evidence review, since they were not presented to the ALJ, and in any event, they would not be material, since they are not time-relevant. See Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993).[22]

The Sixth Circuit has held that the Court does not have to review new evidence unless good cause has been shown and the new evidence is material. Cline v. Comm'r of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996). Plaintiff makes no argument for newness or materiality. Nonetheless, remand is necessary because the record does contain prior complaints of side effects and sleeping difficulties within the physical therapy notes; thus, the ALJ should have considered the related complaints.

## 2.   Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under 42 U.S.C. § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is

---

[21]Plaintiff's Brief at pages 8 (citing TR 201-06), 9 (citing TR 201-02), and 14 (citing TR 203).

[22]Defendant's Brief at page 11, n.4.

strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The ALJ's decision does not reflect careful review of the record regarding Plaintiff's drowsiness and sleeping problems that Plaintiff had initially reported in her early application material and at the hearing as well. Further, the physical therapy notes contain some conflicting evidence for the ALJ to resolve concerning her sleep problems. For these reasons, remand is necessary to allow the ALJ to examine the record again, consistent with this report and recommendation.

## III.   **CONCLUSION**

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment in part, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further fact finding consistent with this Report.

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation, they may serve and file specific, written objections. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:**   November 2, 2006

15

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on <u>November 2, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Janet L. Parker and Kenneth F. Laritz,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606</u>.

<u>s/James P. Peltier</u>
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

16